# In the United States Court of Federal Claims

No. 13-888C

(Filed: April 3, 2015)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| ZAFER TAAHHUT INSAAT VE TICARET, A.S., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Firm Fixed-Price Construction Contract; Delivery of Materials and Supplies to Project Site; Effect of Pakistan Border Closing; Contractor Claim for Equitable Adjustment; Time Extension for Unexpected Delays; Supplementation of Record; Motion to Consolidate. |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Sam Z. Gdanski*, Teaneck, New Jersey, for Plaintiff.

*A. Bondurant Eley*, Trial Attorney, with whom were *Agatha Koprowski*, Trial Attorney, *Joyce R. Branda*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

This case arises from a firm fixed-price contract between Plaintiff, Zafer Taahhut Insaat Ve Ticaret, A.S. ("Zafer") and the United States Army Corps of Engineers to construct a community support facility at the Bagram Air Field in Afghanistan. Under the contract, Zafer was responsible for delivering construction materials and supplies to the project site. In November 2011, a United States/North Atlantic Treaty Organization ("NATO") combat incident resulted in the death of 24 Pakistani citizens. In reaction to this incident, the Government of Pakistan closed its border for 219 days. Zafer claims an equitable adjustment to its contract of $769,748.81 because the Pakistan border closing increased its costs of delivering materials to the site.

Defendant has filed a motion to dismiss Zafer's complaint for failure to state a claim upon which relief may be granted, or in the alternative, a motion for summary judgment. Defendant contends that Zafer was responsible for delivering materials and supplies to the project under the firm fixed-price contract, and that the United States did not cause, and played no role in the closing of the Pakistan border. Also before the Court are two motions from Zafer, one to supplement the record with 67 pages of news clippings relating to the border closing and other facts, and the second to consolidate the present case with another pending case in this Court, Zafer Taahuut Insaat Ve Ticaret, A.S. v. United States, No. 13-861C (filed Oct. 31, 2013). The motions are fully briefed, and the Court heard oral argument on March 4, 2015.

For the reasons explained below, the Court concludes that Zafer assumed the risk of delivering materials and supplies to the project, and therefore was responsible for any increased costs of transportation associated with the Pakistan border closing. Any delays in performance caused by an unforeseen event, such as the border closing, presumably entitled Zafer to a time extension, but the Corps of Engineers provided a reasonable time extension for this event. Accordingly, the Court agrees with Defendant that Zafer is not entitled to an equitable adjustment to its contract. Since the Court's decision is based upon a review of documents and other evidence outside of the pleadings, it is more appropriate to grant Defendant's motion for summary judgment under Rule 56. The Court denies Plaintiff's motions to supplement the record, and to consolidate with the other pending Zafer case.

## Factual Background[1]

Zafer is a construction contractor located in Ankara, Turkey. On May 23, 2011, the Corps of Engineers awarded Zafer Contract No. W912BU-11-C-0017, a firm fixed-price contract to construct the MILCON Consolidated Community Support Facility at the Bagram Air Field in Afghanistan. The Government originally specified a completion date of November 22, 2012. However, the Government could not make the site available until June 21, 2012. The Government issued a bilateral modification, increasing the contract price by $3,365,830.34 to $15,371,029.10 and setting a new completion date of October 9, 2013.

On November 27, 2011, the Government of Pakistan closed its border from the seaport city of Karachi and along land routes into Afghanistan "after a US/NATO incident allegedly killed 24 Pakistanis." Def.'s Mot. at 6. The border remained closed for 219 days

---

[1] The facts are derived largely from Zafer's complaint, and from Defendant's motion to dismiss and attachments to fill in the gaps where necessary. Any factual disagreements are construed in favor of Zafer. See Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 657 (2003) (In a motion for summary judgment, "all justifiable inferences must be drawn in favor of the non-movant.").

and reopened on July 3, 2012. In the winter months, this land route – the Karachi-Pakistan route – is the only practical transport option into Afghanistan. Zafer informed the Government that the border closure would increase its storage and transportation costs, and asked the Government whether shipments should be made through an alternative route or through the closed Karachi-Pakistan border. According to Zafer, alternative routes would have caused time delays of approximately 30-45 days per shipment. Although the border was closed for 219 days, the Court notes that it was closed for only 12 days (June 21, 2012 – July 3, 2012) after the Corps of Engineers made the project site available.

By letter dated June 27, 2012, the Government informed Zafer that under the terms of the contract, Zafer was to use "whatever means necessary to meet its contractual obligations, without additional financial compensation," but that it could request a time extension of the contract completion date. Def.'s App'x A50. On July 11, 2012, Zafer requested "entitlement to additional time." Id. at A51. In the same letter, Zafer also requested reimbursement for "increased costs occasioned by the border closing." Id. On October 24, 2012, Zafer informed the Government that Pakistan "required additional payment to release shipments and that transportation companies were demanding higher prices to transport supplies from Karachi to Bagram." Id. at A55. The Government simply repeated its earlier response. Id. at A56.

Once the border reopened, Zafer continued to face difficulties in getting its materials and supplies to the construction site. Zafer also paid port detention and container demurrage costs for the supplies that were delayed at the border during the border closure. Id. at A57-58. Before Pakistani officials released the shipments, Zafer incurred additional costs due to rate increases because of the backlog of shipping containers at the Karachi port. Id. at A58.

The contract contains four standard Federal Acquisition Regulation ("FAR") clauses that are applicable to this case. First, the contract contained a Site Investigation and Conditions Affecting the Work clause found at FAR 52.236-3. The relevant portion of this clause provides:

> (a) The Contractor acknowledges that it has taken steps reasonably necessary to ascertain the nature and location of the work and that it has investigated and satisfied itself as to the general and local conditions which can affect the work or its cost, including but not limited to (1) conditions bearing upon transportation, disposal, handling, and storage of materials.

Id. The contract also contains a standard Changes clause, FAR 52.243-4, and a standard Default clause, FAR 52.249-10.

The contract states that the materials and supplies in the various line items shall be "FOB: Destination." Def.'s App'x A3, A28. The term "FOB Destination" is explained in FAR 47.303-6, and requires the contractor to deliver the materials and supplies to the specified project site at no charge to the Government. See FAR 47.303-6(a)(1). The FOB Destination section provides that "[t]he Government shall not be liable for any delivery, storage, demurrage, accessorial, or other charges involved before the actual delivery . . . of the supplies to the destination, unless such charges are caused by an act or order of the Government acting in its contractual capacity." FAR 47.303-6(a)(2).

On May 20, 2013, the Contracting Officer denied Zafer's claim for an equitable adjustment, stating Zafer "made a business decision to continue to procure materials and ship through Karachi," even after Zafer knew the border was closed. Def.'s App'x A70. The Contracting Officer granted Zafer a time extension, but denied its request for additional compensation because "Zafer was neither ordered [n]or directed, at any time, to continue performance by another more-costly method, nor were they refused a time extension." Id. at A69.

Zafer then filed a timely complaint in this Court on November 8, 2013. On April 24, 2014, the Government filed a motion to dismiss for failure to state a claim upon which relief can be granted, or, in the alternative, a motion for summary judgment. After multiple time extensions, Zafer filed its response to the Government's motion on November 10, 2014. In this response, Zafer also moved to consolidate this case with its other pending case in the Court, which involves a dispute on a separate contract. The Government filed its reply to Zafer's response on January 20, 2015. Zafer moved to supplement the record on February 27, 2015. All of these pending motions are ready for ruling.

Discussion

I.   Jurisdiction

The Tucker Act provides the Court with jurisdiction to "resolve contract disputes arising under the Contract Disputes Act ("CDA")." Parker v. United States, 77 Fed. Cl. 279, 285 (2007); see also 41 U.S.C. § 7104(b); 28 U.S.C. § 1491(a). Under the CDA, a contractor must "submit a written claim to the contracting officer in order to resolve any dispute that arises with respect to the contract between the government and the contractor." Parker, 77 Fed. Cl. at 286. A claim is a "written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." Deponte Invs., Inc. v. United States, 54 Fed. Cl. 112, 115 (2002).

Here, Zafer submitted a timely claim to the contracting officer for $769,748.81 as an equitable adjustment to the contract. That claim was denied, in writing, and constituted a final decision by the contracting officer. Def.'s App'x A66-71 (contracting officer's final

decision dated July 25, 2013). Zafer then timely filed its claim in this Court within twelve months after receiving the final decision. Accordingly, the Court has jurisdiction to hear Zafer's complaint under the CDA.

II.   Standards for Decision

A decision on a motion for summary judgment rather than on a motion to dismiss for failure to state a claim is proper where the parties rely on factual material beyond the allegations in the complaint. Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1355 (Fed. Cir. 2011). Here, the parties have submitted and relied upon documentary evidence and pleadings beyond Zafer's complaint. Therefore, a decision on a motion for summary judgment is proper in accordance with Rule 56.

Summary judgment is appropriate where the evidence demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A genuine issue of material fact is one that could "affect the outcome" of the litigation when the evidence presented would permit a reasonable trier of fact to find in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence is construed in the light most favorable to the non-movant, but "unsupported assertions or conclusory allegations are insufficient to withstand summary judgment." Commonwealth Edison Co., 56 Fed. Cl. at 657 (citing SRI Int'l v. Matsushita Elec. Corp., 775 F.2d 1107, 1116 (Fed. Cir. 1985)).

The movant may discharge its burden by showing there is an absence of evidence to support the non-moving party's case. See Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Summary judgment is proper when the non-moving party fails to designate specific facts sufficient to establish the existence of an essential element to the non-moving party's case for which that party bears the burden of proof at trial. RQ Squared, LLC v. United States, No. 12-527C, 2015 WL 170230, at *1, *6 (Fed. Cl. Jan. 14, 2015) (citing Celotex, 477 U.S. at 324). The Court reviews the contracting officer's final decision *de novo*, without deference. Info. Sys. & Networks Corp. v. United States, 64 Fed. Cl. 599, 604 (2005).

III.   Analysis

A single principle guides the Court's analysis when a contractor seeks an equitable adjustment from the Government for additional costs incurred during the performance of a firm fixed-price contract. This principle, enumerated in FAR 16.202-1, provides that, absent some compensable government action, "[a] firm fixed-price contract provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract. This contract type places upon the contractor maximum risk

and full responsibility for all costs and resulting profit or loss." FAR 16.202-1; see also Agility Def. & Gov't Servs., Inc. v. United States, 115 Fed. Cl. 247, 250 (2014).

Zafer argues that the Court should find an exception to this overarching risk-allocation principle based upon three main contentions: (1) the Government breached the contract through its failure to compensate Zafer for its increased transportation and storage costs; (2) the Government constructively changed the contract by directing Zafer to proceed with contract performance when Zafer experienced an excusable delay; and (3) the Government breached its duty to cooperate in the performance of the contract. For the reasons explained below, none of these arguments has merit.

      A.      <u>Whether Defendant Breached the Contract</u>

Zafer first alleges that the Government breached its obligation to compensate Zafer for "increased costs in re-procurement, shipping, D&D (detention and demurrage) and warehousing" due to the Pakistani Government's closure of the Karachi-Pakistan Border. See Pl.'s Compl. ¶¶ 7, 29-30.

Zafer's contract specifically allocated all of the risk for increased costs of transportation to the contractor under an FOB Destination" reference. See Def.'s App'x A3, A28. This reference absolved the Government of any responsibility for increased transportation costs because the corresponding FAR provision states:

> The Government *shall not be liable for any delivery, storage, demurrage, accessorial, or other charges involved before the actual delivery* . . . of the supplies to the destination, unless the charges are caused by an act or order of the Government acting in its contractual capacity.

FAR 47.303-6(a)(2) (emphasis added). Furthermore, FAR 47.303-6(b) requires contractors to "[p]ay and bear all charges to the specified point of delivery." The contract also required the contractor to "investigate[] and satisf[y] itself as to the general and local conditions which can affect the work or its cost, including but not limited to (1) conditions bearing upon transportation." FAR 52.236-3.

Plaintiff claims that it has 25 years of government contracting experience with the United States, as well as experience in performing contracts in the Middle East since the 1990s. Pl.'s Compl. ¶ 1. As an experienced contractor, Zafer should know the risks it accepts when it enters into a government contract with an FOB Destination reference. Since the contract allocated the risk of transportation costs to the contractor, Zafer is not entitled to an equitable adjustment for its increased transportation costs under the terms of its firm fixed-price contract.

B.  Whether Defendant Ordered a Constructive Change to the Contract

Zafer next alleges that the Government constructively changed the contract when it ordered Zafer to perform according to its contractual obligations despite the transportation delays Zafer experienced.  Pl.'s Compl. ¶ 9.  Zafer alleges a constructive change of the contract occurred either when the Government directly caused the Karachi-Pakistan Border closure due to its involvement in the US/NATO combat incident, or when the Government negotiated with the Pakistan Government to reopen the border.  Id.

"A constructive change occurs where a contractor performs work beyond the contract requirements, without a formal order under the Changes Clause, either due to an informal order from, or through the fault of, the government."  NavCom Def. Elecs., Inc. v. England, 53 F. App'x 897, 900 (Fed. Cir. 2002); see also FAR 52.243-4, Changes (Jun 2007).  The Government's insistence that a contractor perform according to its contractual obligations does not constitute a constructive change.  See NavCom, 53 F. App'x at 900 ("The government generally has the right to insist on performance in strict compliance with the contract specifications and may require a contractor to correct nonconforming work."). In some circumstances, however, an acceleration order by the Government may constitute a constructive change.  See, e.g., Fraser Constr. Co. v. United States, 384 F.3d 1354, 1360-61 (Fed. Cir. 2004).

Constructive acceleration is a type of change that typically arises when the Government requires the contractor to adhere to the original performance schedule even though the contractor is entitled to an excusable delay that would otherwise have permitted a longer period of performance.  Id. at 1361.  To establish a constructive acceleration claim, five elements must be met: (1) an excusable delay; (2) timely request for additional time; (3) improper rejection of additional time; (4) an order to accelerate; and (5) extra or additional work beyond that provided for in the contract.  Id.  An excusable delay arises from "'unforeseeable causes beyond the control and without the fault or negligence of the Contractor' within the meaning of the default clause of the contract."  Id.

Zafer does not have a valid claim for constructive acceleration.  First, all of Zafer's claimed costs come from shipping and storage.  These are not costs Plaintiff had to incur to meet contract deadlines.  Furthermore, the two cases Zafer relies upon, Dougherty Overseas, Inc., ENG BCA No. 2625, 68-2 BCA ¶ 7165 and Alley-Cassetty Coal Co., ASBCA No. 33315, 89-3 BCA ¶ 21,964, do not support its claims.  In Dougherty, coincidentally involving the same border closing, the Government directed the contractor to use a route other than the Karachi port when the Afghanistan Government closed the border.  The Court granted an equitable adjustment of the contract price because the contract explicitly contemplated that transportation would only occur through the Karachi Port and shipments were marked "VIA KARACHI."  68-2 BCA at 33,245-46.  Similarly, in Alley-Cassetty Coal, the Court found the contractor was entitled to compensation

because the contracting officer insisted upon a different method of shipping than originally contemplated in the contract. 89-3 BCA at 110,490.

Unlike the contracts in Dougherty and Alley-Cassetty Coal, Zafer's contract did not direct the use of a specific shipping route. See FAR 47.303-6 (FOB destination); FAR 52.236-3 (Site Investigation and Conditions Affecting the Work); Def.'s App'x A17-A19 (listing the contract clauses in the contract). Additionally, Zafer received a reasonable time extension due to the border closure. See Def.'s App'x A69. To have a valid constructive acceleration claim, the Government must have improperly denied the contractor's claim for additional time or ordered a method of shipping different than that originally contemplated by the contract. See Fraser Constr., 384 F.3d at 1361; Dougherty, 68-2 at 33,245-46. Such was not the case here.

Alternatively, Zafer asserts that the Government was responsible for Zafer's transportation delays. First, Zafer alleges that the Government caused the Karachi-Pakistan border to close because of the Government's involvement in the US/NATO combat incident, which prompted Pakistan to close its borders. A contractor, however, is "not entitled to compensation for excusable delays not caused by the Government." Edge Constr. Co. v. United States, 95 Fed. Cl. 407, 420 (2010). Plaintiff and Defendant both acknowledge that it was the Government of Pakistan who closed the border. See Pl.'s Compl. ¶ 10; Def.'s Mot. at 11. Because it was the Pakistan Government who caused the excusable delay, Zafer is not entitled to an equitable adjustment.

Second, Zafer alleges that the Government is liable for its increased transportation costs because the Government's negotiations with Pakistan to reopen the border were of a contractual nature and delayed the border's reopening. See Pl.'s Opp. at 2-4 (alleging the Government "contractually interfered, hindered, delayed, [sic] resolution of the border clos[ure] [issue]"). Here, the Government did not extend the delay through its negotiations with the Pakistan Government to reopen to border. The only evidence Plaintiff cites are news articles generally describing the actions of an unnamed "Pentagon team." See Pl.'s Compl. ¶¶ 13-14. These articles are hearsay and are insufficient to show that the Government acted in its contractual capacity with respect to Zafer's contract in negotiating the reopening of the border. See Tekkon Eng'g Co., Ltd., ASBCA No. 5831, 11-2 BCA ¶ 34,872 (finding the Government not liable for increased transportation costs because it did not cause the demurrage charges or the expenses of the drivers in prison). Accordingly, the Government is entitled to summary judgment on Zafer's claim for a constructive change.

      C.      Whether Defendant Breached its Duty to Cooperate

Finally, Zafer alleges that the Government breached the duty to cooperate when it failed to properly administer the contract and "independently consider Zafer's [request for

an equitable adjustment] in a thoughtful and independent manner." See Pl.'s Compl. ¶¶ 22-27.  The duty to cooperate consists of the implied obligation of good faith and fair dealing that exists in all contracts the Government enters.  See, e.g., Centex Corp. v. United States, 395 F.3d 1283, 1306 (Fed. Cir. 2005); Renda Marine, Inc. v. United States, 66 Fed. Cl. 639, 648 (2005) (noting "[u]nder each contract it enters, the government has implied duties of good faith and fair dealing").  The Government is presumed to act in good faith and the contractor bears the burden to overcome the presumption by clear and convincing evidence.  See Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239 (Fed. Cir. 2002).  However, "interference by the government with a contractor's access to the worksite may constitute a breach of the government's duty to cooperate." Olympus Corp. v. United States, 98 F.3d 1314, 1318 (Fed. Cir. 1996).

Here, the Government did not breach its duty to cooperate.  First, the contract did not contain a Government warranty against the actions of the Pakistani Government or guarantee access to the project through the Karachi port.  Second, the Government provided a reasonable time extension for the border closure.  Def.'s App'x A69.  Zafer points to no other evidence that would show the Government failed to cooperate in the administration of its contract.  Accordingly, the Government is entitled to summary judgment on this claim.

## IV. Motion to Consolidate and Motion to Supplement the Record

The Court will next address Zafer's two motions.  First, Zafer requested that this case be consolidated with its other pending case in the Court for ease of discovery and judicial economy because it claims that both cases involve similar issues.  Pl.'s Opp. at 9. Rule 42 affords the Court broad discretion to consolidate cases involving common questions of law or fact upon consideration of whether "the interest of judicial economy outweigh[s] the potential for delay, confusion, and prejudice that may result from consolidation."  Lucent Techs. Inc. v. United States, 69 Fed. Cl. 512, 513 (2006). Consolidation here would not promote judicial economy.  Zafer's other pending case in this Court involves an entirely different contract on an unrelated project.  The other case also covers different issues not present here such as critical path delays, a specific transportation problem with a chiller, and questions regarding whether Zafer performed work not covered by that contract's warranty clause.  See Pl.'s Compl. ¶¶ 9-16, 34-38, 39-47.  Further, discovery in Zafer's other case has been open for several months.  It is within the Court's discretion to deny a motion to consolidate if "one of the cases is further into discovery than the other case."  See Borough of Olyphant v. PPL Corp., 153 F. App'x 80, 82 (3d Cir. 2005).  Accordingly, Zafer's motion to consolidate is denied.

Second, Zafer filed a motion to supplement the record with 67 pages of news articles attempting to show that the contract between Zafer and the Government contemplated the shipment of supplies to the project through the Karachi-Pakistan Border.  Pl.'s Mot. at 2-

3. These news articles are inadmissible hearsay and are also barred by the parol evidence rule, which prohibits extrinsic evidence to alter the terms of a fully integrated unambiguous contract. Gemini Elecs., Inc. v. United States, 65 Fed. Cl. 55, 63 (2005). Zafer's motion to supplement the record is denied.

### Conclusion

For the foregoing reasons, the Government's motion for summary judgment is GRANTED. Plaintiff's Motion to Consolidate this case with Zafer Taahuut Insaat Ve Ticaret, A.S. v. United States, No. 13-861C (filed Oct. 31, 2013), and Plaintiff's Motion to Supplement the Record are DENIED. The Clerk shall enter judgment for Defendant dismissing the Complaint.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge